No. 2.—Daniel Roberts, plaintiff in error, *vs.* Thomas M. Foreman, *et al.* defendants in error.

[1.] In an action of ejectment by heirs at law, proof that the plaintiffs are children "of the *late J. B.*", with the admission by the defendant that one of the children was the owner, in the absence of counter-vailing proof, is sufficient to authorize the jury to find the title in the plaintiffs.

[2.] If upon an examination of the whole evidence, the inconsistencies of witnesses, and the suspicious nature of title papers, the verdict of the jury is such as the whole case warrants, it will not be set aside.

Statutory action to recover land, &c., from Laurens Superior Court. Tried before Judge Love, at October Term, 1856.

Thomas M. Foreman, Joseph Bryan, James P. Screven, and Jonathan R. Bryan, brought suit against Daniel Roberts, to recover lot of Land No. 176, in the 18th district of originally Wilkinson now Laurens county.

The plaintiffs upon the trial, offered in evidence a plat and grant from the State of Georgia, to Joseph Bryan, of Chatham county.

Next, the answers of *George M. Troup*, to interrogatories, who swore in substance ; That he knew the parties; that Thomas Foreman, Joseph Bryan and Jonathan R. Bryan, are the sons of the late Joseph Bryan, of Chatham county, and James P. Screven married a daughter; that for several years prior to the last two or three, the defendant at different times and places, made inquiries after Mr. Foreman, saying that he wished to see him ; that he owned a tract of land drawn by his father which he wished very much to buy, it lying adjoining him, and that he would give as much or more for it than any one else, and that he thought he was entitled to a preference as he had been keeping off trespassers ; and that he looked to no body but Foreman as owner, and as capable of making a title; that defendant's conversations were the same in substance on every occasion, when

the subject was spoken of, the last being, as well as witness recollects, within the last three years. In the month of September, 1854, defendant came to his house, and first introduced the subject of this suit, and seemingly with a desire to know if he, witness, could not make some alteration in his answers to former answers to interrogatories, and especially with regard to the time of the conversation. Witness told him he would not alter a word. Defendant then said he never designed to cheat or defraud Foreman. Witness told him, he was glad to hear it; he then said that witness had stated in his answers what was strictly true; that he never denied it, and that he would make confession of it in open Court. Said that my (witness') son as agent of Mr. Foreman, had sold him the land, which he was ready to pay for, but that Foreman refused to make him a warrantee title; mentioned to him his repeated promises to give as much, or more, for the land than any body else, which he admitted, only expressing a doubt, that he had used the word *more*.

The answer to the cross interrogatories are the same as to the direct.

Interrogatories executed 2d November, 1854.

Possession was admitted by defendant, and plaintiffs closed.

Defendant then opened his case and read the answers of the same witness—*George M. Troup*, to interrogatories executed 17th August, 1853.

The answers to the first and second interrogatories are the same as those before given; and to the third, he answered, That for several years prior to the last *two or three*, at different places, that defendant made inquiries after Foreman, saying that he wished to see him; that he owned a tract of land drawn by his father, which he wished to buy, it lying adjoining him, and that he would give as much or more than any one else, and he thought he was entitled to the preference as he had kept off trespassers, and that he looked

to nobody but Foreman as owner, and capable of making title, and his conversation, was the same in substance on every such occasion, the last as well as I recollect being within three years, &c.

To the cross interrogatories witness answers in substance: That the conversations with defendant were repeated within the last seven years; that in all of them no right or title was recognized or insinuated in any body but Mr. Foreman, and nothing said about compromises, on the contrary, defendant said he would give as much or more than any one else; knows nothing of the purchase or possession of defendant; never knew he was in possession of the land, unless his assumed agency for keeping off trespassers can be so construed; it is a long time since the first conversation; thinks the last was within three years.

Defendant then introduced two quit claim deeds, one from Daniel McDaniel to Joseph Aycock, dated 11th August, 1835, for the consideration of one hundred dollars, and recorded 27th July, 1836. The other from Aycock to defendant, dated 27th March, 1851, for the consideration of $150.

Plaintiff in reply, proved by one *Mullis*, that the land was worth seven or eight hundred dollars, and was in Laurens county.

*Joseph Aycock* was then sworn by defendant, says: That he went into possession of the land in 1835, and held possession and had a portion in cultivation from the time he bought from McDaniel up to the time he sold to defendant, in 1851; McDaniel settled it about 1830; that witness had rented it out when he did not cultivate it himself, and had paid taxes for it every year while he owned it, and during all that time, he claimed it as his own, and was never molested nor did any one ever tell him that the land was not his, or that there was any other title or claimant, during the the time he held it; that he rented it to defendant several years; did not recollect that McDaniel when he sold to him, said anything to him about not owning the land; he did

claim the land and sold it to witness for fifty dollars; he did not tell Roberts when he sold to him that he only had a quit claim, and did not own it, as he recollected; but does not recollect all that was said by him and Roberts about it; he rented out the land for four or five years, up to 1838, then moved to Sumter, and while there he rented it to Roberts; a portion of it one William Hampton had fenced in and cultivated; that from the time he purchased, he claimed and exercised control over it, and used it as his own. McDaniel lived on the land a year or two, after he purchased it, and all the time he had the land, or a portion of it under fence, and rented and cultivated and claimed it as his own. Roberts did tell him that some man had stayed all night at his house and said that he owned the lot and desired Roberts to keep off intruders; don't recollect who he rented it to while in Sumter; don't remember whether it was cultivated or not, during the time, but he never relinquished his possession or control, nor did he abandon it. Roberts gave him seventy-five dollars for it; don't recollect who he rented it to in 1840, or 1843 or 1844; nor how much Roberts paid him for the rent, nor what years, nor how many years Roberts rented it. There were six or eight acres under fence at the time he owned it.

The foregoing is the substance of Aycock's testimony, brought out by the examination in chief, cross examination and re-examination, both by defendant and plaintiffs.

The jury found for the plaintiffs, and defendant made a motion for a new trial, on the ground that the verdict was contrary to law, against evidence and contrary to the charge of the Court; and after argument, the Court overruled the motion, and refused a new trial, and defendant excepted.

H. Morgan, for plaintiff in error.

Warren, for defendants in error.

*By the Court.*—McDonald, J. delivering the opinion.

All the errors assigned in the record are abandoned except that predicated on the refusal of the Court to grant a new trial, on the ground that the verdict of the jury was contrary to evidence.

[1.] It is first insisted that the plaintiffs' evidence was insufficient to sustain their title to the premises sued for, and on that account a new trial ought to be granted.   The grant of the State of Georgia to Joseph Bryan, established the title in him.   Governor Troup testified that the plaintiffs, with the exception of James P. Screven, are the sons of Joseph Bryan, and that James P. Screven married his daughter.   He refers to Joseph Bryan as the *late* Joseph Bryan.   The plaintiff in error wished to see Mr. Foreman, and said, that he owned a tract of land drawn by his father.   This was evidence enough for the consideration of the jury, and to authorize them to find the title in the plaintiffs, in the absence of countervailing proof.   There was no evidence that the title ever passed from the grantee to any one else.   The only evidence submitted by the plaintiff in error to the jury, was the deed (quit claim) from Daniel McDaniel to Joseph Aycock, and a deed of the same description from Aycock to himself; neither of them proceeded from the grantee.   The evidence of title in the defendants in error, though slight, was sufficient to warrant the jury to find in their favor on that point of the issue, no testimony whatever, having been given by the opposite party to impair its force.

[2.] But it is insisted, in the second place, if the title was in the plaintiffs, they had lost it, by the statute of limitations. To sustain the plea of the statute, the plaintiff in error attempted to connect his possession with the two quit claim deeds, as color of title.

In that part of Georgia where lands were distributed by lottery, and each tract is known and designated by distinctive

marks and numbers, and there can be but one person to whom a grant from the State could issue, quit claim deeds, not connected with the claim of title, should be looked upon generally, with great suspicion, as having no rightful foundation, and as having an origin in trespass or fraud. They are certainly not entitled to great favor. It is true, there may be instances in which they were *bona fide* made on one side, and *bona fide* received on the other. Possession resting on a quit claim deed of this discription, may unquestionably ripen into a title, and defeat the negligent owner of a better title. On the trial of this case the jury certainly had the right to investigate all the circumstances, and determine from the evidence before them, whether the plaintiff in error did not so recognize title in the defendants in error, as to authorize them to find that he held in subordination thereto. *Wood et al. vs. McGuire's Children*, 17. *Ceo. Rep.* 320. The suit was brought on the 13th day of August, 1852. The deed from Aycock to Roberts bears date 29th March, 1851. Governor Troup, on the 17th August, 1853, testified, that for several successive years, prior to the last two or three years, within which time he had not seen him, Mr. Roberts, whenever he met him, made anxious inquiries after Mr. Foreman, and said that he (Foreman,) owned a tract of land drawn by his father, which he wished very much to buy, thought he was entitled to the preference that he had been keeping off trespassers and intruders, that he looked to nobody but Mr. Foreman as the owner, and as capable of making a title. The conversation was in substance he same at each time, and the last, as well as witness remembers, was within three years of the time he deposed. The acknowledgment by Roberts, of title in Foreman, repels the presumption of his holding adversely. *Conyers vs. Kenan & Hand*, 4. *Geo. Rep.* 313.

McDaniel, according to the testimony, was a trespasser. Aycock who purchased from him was content to take a quit claim deed, and did not attempt to trace his title, and no title

Roberts vs. Foreman et al.

in him is exhibited.   The subsequent possession of Aycock and his tenants is not proven to be continuous.   It cannot be tacked to McDaniel's, for McDaniel had no color of title to support his possession.   If there was an adverse possession, it could not date anterior to McDaniel's deed to Aycock. Aycock testifies that he went into possession of the lot in 1835, and held possession of it, and had a portion of it in cultivation from the time he bought it of McDaniel, up to the time he sold it to Mr. Roberts in 1851.   That he had rented it out when he did not cultivate it himself, and paid taxes for it every year while he owned it; that there were six or eight acres under fence, all the time he owned it.

On his cross examination, he testified that he rented out the land and cultivated it himself for four or five years, up to 1838.   He then moved to Sumter county, and while there, he rented it to Mr. Roberts.   From August, 1835, the date of Aycock's deed, to 1838, was two years and five months, far short of four or five years.   Although he had stated that while in Sumter county he rented the land to Roberts, he afterwards says, he does not recollect to whom he rented it while he was in Sumter county, and does not recollect whether it was cultivated or not, during the time. He does not recollect what rent Mr. Roberts paid him, nor how many years Roberts rented it.   It is unnecessary to consider what weight the jury ought to have given to the deeds as color of title.   Conceding to them all the force and effect that any quit claim deed is entitled to for that purpose, we are not prepared to say that the verdict of the jury was contrary to evidence.

The jury had a right to weigh the testimony, compare and sift it, and apply it to the issues before them.   They did so, and we are not sure that we should not have come to the same conclusion, if the facts, manner of the witnesses in testifying, and the apparent inconsistency of the statements of some of them, had been submitted to our decision.

Judgment affirmed.